Samuel C. Coleman, J.
The crucial question is whether the insured, on August 4, 1960, received notice from the insurance company that effective August 16, 1960 her policy of insurance would be cancelled for nonpayment of premium. If she had, she cannot recover.
The insured was sued by one Rodriguez to recover for injuries he received when (Oct. 14, 1960) he was struck by Mrs. Seda’s automobile. The insurance company declined to defend, and Mrs. Seda filed a third-party complaint against the bank, alleging that the bank, in violation of an agreement to pay the insurance premium (premium finance agreement), had failed to do so and had brought about the cancellation of the policy, with consequent damage to her. The bank denied liability and on its motion the third-party complaint was severed from the principal action. Since that step, an unopposed motion for summary judgment by the injured plaintiff was granted; and later after inquest, judgment for $17,500 was entered in the plaintiffs’ favor.
The policy of insurance, obtained through a broker, was issued June 7, 1960, for one year. The insured paid the broker $44, on account of premium; this was sent to the insurance company. On July 2, 1960, the insured signed a “ Premium Finance Agreement ’ ’ under which she agreed to pay the broker the bal *201 anee of the premium, $123.50, in monthly installments of $15.44, beginning July 7, 1960. The agreement was entered into pursuant to article XII-B of the Banking Law, it recites that the obligation to pay 6 ‘ this note ’ ’ was ‘1 for value received ’ ’; the obligations of the broker were not described, but by reference to the Banking Law, it is assumed that the broker undertook to pay the unpaid premium. The note dated July 2, 1960, was assigned to the bank, “ subject to their acceptance of such assignment.” The date of acceptance is July 5,1960, and I shall assume that as the date when it was sent to the bank, although the bank asserts that it was not received until July 12. The insured and the broker on June 22 received notice from the insurance company that the policy would be cancelled if the balance of the premium was not received by July 12 — a fact, which taken in connection with the bank’s method of doing business leads me to believe that the receipt of this notice was what brought the “Premium Finance Agreement ” into being and that the agreement was signed at a later day than the insured says — when the “ grace period ” was expiring and that it probably was received by the bank on the 12th. In any case, by July 12 the July 7 monthly installment of $15.44 was due and the bank so advised the insured and her broker. ‘ ‘ When the remittance for the foregoing amount due is received, we will proceed to pay the gross premium to the insurance company”. No payment was made and on July 27, 1960, a “ sécond request ” for the July payment was made, with the same notation, that is, that when received the ‘ ‘ gross premium ’ ’ would be paid. On August 2, the insured (or her husband) purchased a draft for $15.44 which she says was mailed to the bank immediately. The bank says that from its course of business the draft was not received until August 18, when, the August payment being due, it advised the insured of that fact, informing her again that when that was received it would pay the “gross premium”, to the insurance company. It did not say that meantime it was retaining the July installment. Regularly thereafter until December the bank sent monthly notices calling attention to the nonpayment of the installments with the constant statement that upon receiving the arrears it would pay the premium. No further payments were made until October 24, when $30.88 was received (two installments) (the insured had already seen her own attorney by this time), another on November 7, and the last on December 8. But the insured was still in default; at no time did the bank remit any amount to the insurance company and in December it returned all payments and the note to the broker. Meantime two events had occurred — the policy had *202 been cancelled on August 16 and the accident occurred October 10.
The insured contends that the bank was obliged immediately on the receipt of the note as assigned to it, to pay the full balance of the premium, looking thereafter to her for the payment of any installments, whether arrears or not. In any case, she says, when on August 2 (or Aug. 18) she sent the July installment, the bank should have done what it said it would do — “ proceed to pay the gross premium to the insurance company ”, without reference to arrears. But on August 3, the insurance company had already mailed its notice of cancellation to the insured (a copy went to the broker with a refund check of $16 for unearned premium), cancellation to become effective August 16. The plaintiff argues that if the bank had then offered to pay the premium, it, the bank, “ could have either attempted to reinstate the policy or otherwise unequivocally advised the plaintiffs that the policy was not in full force and effect and thus give the plaintiffs the opportunity to secure other insurance.”
The plaintiff did have that opportunity. The notice of cancellation was mailed as I have said on August 3 and I am persuaded that it was received by the insured a day or two thereafter. The insured’s husband testified that the notice was not received; there was, he said, confusion in names between his wife and a relative who lived in the same house. But his testimony in this respect was halting and of doubtful import. More significantly, however, his wife, present in court throughout the trial, did not testify; she did not say that she did not receive the notice.
It is also significant, on the question of the receipt of notice of cancellation, that after the accident the insured did not report it to the insurance company, nor did she communicate with her broker; when the injured person’s attorney the day after the accident left his card in her letter box, she did not submit the matter to the insurance company, but saw her own attorney; nor did she ask her attorney to ask the insurance company to defend, and when the summons and complaint were served, the insured sent them not to the insurance company but to her own attorney. A copy of the notice of cancellation was received by the broker. The receipt of the notice of cancellation put an end to the insured’s claim against the bank.
Of course, one may recover against a promisor for breach of contract to effect insurance or to keep insurance in force, but such a right of recovery cannot be accorded to one who on August 4 (or 5) learned that her insurance would lapse on August 16, made no effort to reinstate it or to obtain new insur *203 anee and for over two months drove an automobile without having the benefit of insurance. This is not a case where the insured was in ignorance of the fact that the insurance had lapsed, or with knowledge of the lapse had insufficient time to redress the situation.
The insured relies upon the regular requests for payment made by the bank. But the later requests were made when she knew the policy had been cancelled; the requests indicated that copies went to her broker; yet she remained inert even in the face of the very statement (in each of the requests) upon which she relies — that payment to the insurance company would, be made by the bank. The bank may have been demanding more than it should, it may even have committed a breach, exposing itself to payment of additional costs in obtaining new insurance; but the damages are not, cannot be payment to the insured of the amount of a judgment obtained against her when willfully she operated an automobile without insurance and in violation of law.
On the question of damage, whatever may be the consequences of a proper claim for recovery over, I observe (1) the consequence of the motion severing the claim over was not to put the bank on notice of all subsequent steps taken in the principal action, (2) the motion for summary judgment was not brought to the attention of the bank, (3) the motion for summary judgment was unopposed, although if the facts had been as they were shown in the insured’s report to the Motor Vehicle Bureau, and had been so presented, the motion unquestionably would have been denied, (4) the assessment of damages was obtained on default and without notice by the insured to the bank. In such circumstances the insured can hardly recover over against the bank. The complaint is dismissed.